UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TYGANDA GILMORE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 16-189-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY KIZZIAH, Warden,[1] | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Inmate Tyganda Gilmore was previously confined at federal penitentiaries in the Eastern District of Kentucky. Gilmore filed two petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The first petition was filed in this case, which the Court will refer to as *Gilmore I*. The second petition was assigned to another Judge in this district. *See Gilmore v. Ormond*, No. 6: 16-cv-237-GFVT (E.D. Ky. 2016). The Court will refer to the second petition as *Gilmore II*. Since the two cases involve overlapping issues, the Court takes judicial notice of the documents filed by Gilmore in each case, and it will refer to those documents by citing the record in either *Gilmore I* or *Gilmore II*.

---

[1] Gilmore was confined at the Federal Correctional Institution (FCI) in Beckley, West Virginia, when he filled out his habeas petition in this case. [Record No. 1] He listed FCI – Beckley Warden Joe Coakley as the respondent in this matter. [Record No. 1] However, it appears that when Gilmore mailed his petition for filing, he was confined at the United States Penitentiary (USP) – Big Sandy in Inez, Kentucky. [Record No. 1-3 at 1-2] As a result, the Court will substitute USP – Big Sandy Warden Gregory Kizziah as the respondent herein.

-1-

The habeas petition in *Gilmore I* is now before this Court for an initial review. *See* 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). For the reasons set forth below, the Court will deny that petition.

**I.**

In August 2005, a Magistrate in Richland County, South Carolina issued an arrest warrant against Gilmore for allegedly committing "assault/simple assault and battery." [Record No. 1-2 at 23] Approximately two months later, a Family Court Judge in the same county issued a bench warrant against Gilmore for allegedly failing to pay child support. [Record No. 1-2 at 25-26] Before these state charges could be resolved, Gilmore pled guilty to a federal drug-related charge and he began serving time in federal prison. *See United States v. Gilmore*, No. 3: 05-cr-759-JFA (D.S.C. July 27, 2006). Thereafter, the Richland County Sherriff's Office lodged a detainer against Gilmore with the Federal Bureau of Prisons ("BOP"). [Record No. 1-2 at 33] It appears that this initial detainer only referred to the outstanding warrant for assault. [Record No. 1-2 at 33]

In October 2006, pursuant to the Interstate Agreement on Detainers Act ("IADA"), the BOP gave Gilmore a form notifying him of the outstanding warrant against him for assault. [Record No. 1-2 at 12]. Gilmore signed that form and another document indicating that he wished to exercise his rights under the IADA and, therefore, was formally requesting a final disposition on the assault charge. [Record No. 1-2 at 11-12] BOP officials then sent these forms and other letters to the Richland County Solicitor's Office, informing that office that Gilmore requested disposition of the assault charge. [Record No.

1-2 at 6-13] The BOP noted that, under the IADA, "Inmate Gilmore is to be brought to trial on these charges within 180 days from the date the forms were received in your office as noted on the certified mail receipt." [Record No. 1-2 at 13]

In January 2007, the Richland County Solicitor's Office sent a response to one of the BOP officials acknowledging the 180-day time period, but adding that it had no charges pending against Gilmore. [Record No. 1-2 at 14] The solicitor's office explained that "[i]t could be that this warrant belongs to the Richland County Sheriff's Department and has not been received in our office." [Record No. 1-2 at 14] The Richland County Solicitor's Office then suggested that the BOP contact the Richland County Sheriff's Department directly. [Record No. 1-2 at 14]

A few days later, a BOP official sent another letter to the Richland County Solicitor's Office, indicating that "the necessary [IADA] paperwork was sent to your office as the primary prosecutor for Richland County, as we believe your office is the primary authority for prosecution and extradition matters in your county." [Record No. 1-2 at 15] The BOP official then added that "[i]t was this office's intention that your office would forward the paperwork to the appropriate Court in the case you did not have such jurisdiction. In any event, the warrant specifies the case is assigned to Hopkins Magistrate Court, and therefore, I will forward the necessary paperwork directly to the Hopkins Magistrate Court." [Record No. 1-2 at 15].

The BOP then sent a letter to the Richland County Magistrate – Hopkins Division, indicating that Gilmore had "requested disposition of pending charges in your jurisdiction

pursuant to the . . . IADA." [Record No. 1-2 at 17]. The BOP also sent another letter to the Richland County Solicitor's Office and more letters to the Magistrate again stating that Gilmore was seeking final disposition of the pending charges pursuant to the IADA. [Record No. 1-2 at 19-21] However, it is not clear whether the BOP attempted to directly contact the Richland County Sherriff's Department, as the Richland County Solicitor's Office had suggested.

Gilmore claims that he did not hear anything from Richland County within the 180-day time frame established by the IADA. [Record No. 1 at 6-7] In fact, Gilmore suggests that nothing happened until 2011, when the Richland County Sherriff's Department sent a letter asking the BOP to once again place a detainer on Gilmore because it held warrants against him for assault and failure to pay child support. [Record No. 1-2 at 27] It appears that the BOP acknowledged the existence of this detainer in 2014. [Record No. 1-2 at 24]. Then, in March 2015, Gilmore wrote his own letter to a Judge in Richland County attempting to explain the situation and asking that his assault charge finally be resolved. [Record No. 1-2 at 1-2] A few months later, the BOP sent more correspondence to the Richland County Solicitor's Office indicating that Gilmore was requesting disposition on the outstanding assault and failure-to-pay-child-support charges. [*Gilmore II* – Record No. 1-1 at 1-6] Nevertheless, Gilmore claims that neither he nor the BOP ever received a response. [Record No. 1-2 at 29; *Gilmore II* – Record No. 1 at 2]

Gilmore then requested an administrative remedy with the BOP, arguing that the state of South Carolina failed to remove him from federal custody to answer the pending

charges against him within the 180-day time frame specified under the IADA. [Record No. 1-2 at 28-32] In response, the Warden noted that the BOP "did alert prosecuting officials of the 180-day lapse." [Record No. 1-2 at 28] Similarly, the BOP's Mid-Atlantic Regional Director acknowledged that the BOP "sent correspondence to the Richland County, South Carolina, Solicitor and Richland County, South Carolina, Magistrate several times pointing out that you have applied for disposition of the charges against you. Bureau staff have indicated the time frames and have asked that the state take appropriate action. To date there has been no response from the state." [Record No. 1-2 at 31]. Nevertheless, the BOP officials directed Gilmore to contact his attorney or state authorities in South Carolina, saying that only the state could authorize the removal of its detainer. [Record No. 1-2 at 28, 31]

After pursuing his administrative remedies, Gilmore filed two federal habeas petitions with the United States District Court for the District of South Carolina: (1) the petition in this case, which alleges a violation of the IADA with respect to the assault charge, and (2) the petition in *Gilmore II*, which alleges a violation of the IADA with respect to the charge of failing to pay child support. [Record No. 1; *Gilmore II* – Record No. 1] However, because Gilmore was confined at a federal prison in the Eastern District of Kentucky when he filed each petition, the court transferred these matters to this district. [Record No. 15; *Gilmore II* – Record No. 9].

Gilmore argues in his petitions that the state of South Carolina has violated the IADA and his speedy trial rights by not bringing him to trial or otherwise disposing of the

charges against him. [Record No. 1; *Gilmore II* – Record No. 1] He complains that, because the state's charges and corresponding detainer remain pending, he has lost certain prison privileges and is unable to participate in specific programs, such as the BOP's Residential Drug Abuse Program ("RDAP"). [Record Nos. 26, 27, 34; *Gilmore II* – Record No. 14] Gilmore has submitted evidence from the BOP that supports this assertion. [Record No. 26 at 2 and No. 27-1; *Gilmore II* – Record No. 14-1] Ultimately, Gilmore asks the Court to remove the state's detainer. [Record Nos. 26, 27, 34; *Gilmore II* – Record No. 1 at 8-9 and No. 14 at 1] Gilmore also recently asked the Court to transfer both of his cases to the United States District Court for the District of Arizona because he is currently being held at the United States Penitentiary in Tucson, Arizona. [Record No. 34]

**II.**

As an initial matter, the Court will deny Gilmore's request to transfer this case to the federal district court in Arizona because jurisdiction over a § 2241 habeas petition is determined at the time the petition is filed. Since Gilmore filed his petition while he was incarcerated in the Eastern District of Kentucky, this Court retains jurisdiction over his petition even though he has since been transferred. *See White v. Lamanna*, 42 F. App'x 670, 671 (6th Cir. 2002).

The Court will deny Gilmore's habeas petition because he has not fully pursued the remedies available to him in state court. Gilmore claims that he has requested final disposition of the assault and failure-to-pay-child-support charges pursuant to the IADA, and he attaches the letters and other correspondence between him, the BOP, and officials

in Richland County, South Carolina. [Record No. 1 at 3 and No. 1-2 at 1-27; *Gilmore II* – Record No. 1 at 2, 6-10 and No. 1-1 at 1-6]. Gilmore claims that he has done "everything in [his] power to have these detainers cleared up." [Record No. 26 at 1]. Gilmore has certainly taken numerous steps to try to resolve the charges against him. But since Gilmore is claiming that the state of South Carolina violated the IADA and his speedy trial rights, his remedy at this point is to formally initiate proceedings in state court in Richland County, South Carolina, and to move that court to dismiss the charges against him and quash the detainer. Gilmore does not allege and the record does not reflect that he has taken these steps. Therefore, his habeas petition is premature, at best.

This outcome is consistent with case law in this district. Indeed, in a similar case, the Court noted that the petitioner "does not allege and the record does not reflect that he pursued state legal action . . . following the IAD violation—not even a motion to dismiss the charges or indictment." *Miles v. Rees*, No. 6: 07-cv-089-KKC, 2007 WL 1455872, *2 (E.D. Ky. May 15, 2007). The Court recognized that "state procedures exist to remedy the alleged IAD violation that [the petitioner] must first exhaust," and the Court directed the petitioner to initiate proceedings in state court "in the nature of a motion to dismiss based on a violation of the IAD." *Id.* Likewise, in another case, the Court indicated that, where "the state court has yet to rule upon the merits of [the petitioner's] motion to dismiss the indictment, . . . the Court cannot conclude that there is yet any defect to correct at all, let alone one qualifying as so fundamental it warrants preemptive federal habeas relief."

*Davenport v. Kentucky*, No. 6: 16-cv-210-GFVT, 2016 WL 7446389, *2 (December 27, 2016).

The IADA also designates the state court in Richland County, South Carolina, as the appropriate forum to address the alleged IADA violation. After all, the IADA provides that, if there is a violation of the 180-day time limit, "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." 18 U.S.C. app. 2, § 2 art. V(c). Thus, as this Court has previously recognized, the IADA "does not explicitly grant authority to courts in the sending/custodial jurisdiction to render a detainer invalid or to dismiss another jurisdiction's charges underlying the detainer." *Howard v. Rees*, No. 6: 06-cv-136-DCR, at 4 (E.D. Ky. September 20, 2006). Instead, the "[a]uthority to render a detainer invalid and to dismiss the underlying charges is afforded to the charging—not the sending—jurisdiction." *Id*.; *see also Davenport*, 2016 WL 7446389, at *2 ("[R]ights under the IADA are properly asserted as a defense to the continued prosecution of charges in the underlying criminal proceeding itself, not in ancillary proceedings in a separate court challenging the detainer resulting from those charges."); *Phipps v. Kentucky State Parole Board*, No. 3: 13-cv-060-GFVT, 2013 WL 5964678, *2 ("If [the petitioner] wants the . . . detainer quashed, he must file an action in the Kentucky state courts under the [IADA].").[2]

---

[2] Another court has emphasized that, "[b]y its terms, the IADA is implicated when a prisoner is subject to an 'untried indictment, information or complaint on the basis of which the detainer has been lodged.'" *Owens v. Virginia*, 2016 WL 2621957, *2 (E.D. Va. 2016) (quoting Va. Code Ann.

The Court recognizes that there is some authority indicating that it can quash a state's detainer under limited circumstances. *See, e.g., Schofs v. Warden, FCI, Lexington*, 509 F. Supp. 78 (E.D. Ky. 1981). However, that case still suggests that the petitioner must first pursue the remedies available to him in state court. For example, in *Schofs*, a habeas petitioner confined in the Eastern District of Kentucky asked this Court to quash a detainer lodged against him by the state of Connecticut and to dismiss the underlying charges. *See id.* at 79. However, the Court first directed the petitioner to "initiate proper proceedings in Connecticut" before it would consider the petitioner's motion to quash. *See id.* at 81. The Court explained that "[e]xhaustion of available state court remedies, not including a return for trial, is still required." *Id.* Similarly, other courts have stated that a jurisdiction's authority to quash a state's detainer exists in the context of a situation "where the prisoner's rights under the IAD have been violated *and the receiving jurisdiction has failed to act to dismiss the indictment.*" *Tungate v. Thoms*, 45 F. App'x 502, 504 (6th Cir. 2002) (emphasis added) (citing *Schofs*, 509 F. Supp. at 82); *see also Mace v. Whitehead*, 2010 WL 1490001, *6 (D. Md. 2010). Here, despite Gilmore's other efforts, there is no indication that he has formally initiated proceedings in state court and tried to dismiss the charges against him.

**III.**

---

§ 53.1-210, Art. III(a)). As a result, that court has concluded that the IADA "does not apply where a detainer is based on a felony arrest warrant." *Owens*, 2016 WL 2621957, at *2. Since the detainer placed against Gilmore by the South Carolina authorities appears to have been based on arrest and bench warrants, there is an argument that the IADA may not even be implicated in this case.

For the reasons stated above, the Court will deny Gilmore's habeas petition. At this point, Gilmore's remedy is to formally initiate proceedings in state court in Richland County, South Carolina, and to move that court to dismiss the charges against him and quash the detainer. Since there is no indication that Gilmore has taken these steps, it is hereby

**ORDERED** as follows:

1. Warden Gregory Kizziah is **SUBSTITUTED** for Warden Joe Coakley as the respondent in this proceeding.

2. Gilmore's letter [Record No. 34], which he filed on April 7, 2017, and this Court construes as a motion to transfer, is **DENIED**.

3. Gilmore's petition for a writ of habeas corpus [Record No. 1] is **DENIED**.

4. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

5. A corresponding judgment will be entered this date.

This 24th day of May, 2017.



Signed By:
Danny C. Reeves  DCR
United States District Judge